IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CR-143 |
| | ) | |
| RANDALL EUGENE THOMAS, | ) | (VARLAN/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## ORDER OF DETENTION PENDING TRIAL

This case came before the Court on November 29, 2010, for a detention hearing pursuant to 18 U.S.C. § 3142(f). Assistant United States Attorney Melissa M. Millican appeared on behalf of the Government. Attorney John E. Eldridge represented the Defendant, who was also present. The Defendant sought release on conditions, including that he resume living with his girlfriend Stevi Harden and their two-year-old daughter and return to his work as a self-employed auto mechanic. The Government sought pretrial detention, arguing that no conditions of release exist that would reasonably assure the Defendant's appearance in court or the safety of the community.

### EVIDENCE AND ARGUMENT

The Defendant is charged [Doc. 1] with one count of being a felon in possession of a firearm and ammunition on February 18, 2010. At the detention hearing, the Government presented the testimony of Sergeant David Amburn of the Knox County Sheriff's Office. Sgt Amburn testified that on February 18, 2010, he investigated the Defendant's possession of a firearm.

1

He identified a recording [Exh. 1] of a cellular telephone call by the Defendant to Stevi Harden, made while the Defendant was detained in a police car awaiting transport to jail. The Defendant had already informed an officer that he could text and access the internet on his cellular telephone. During the call, the Defendant told Ms. Harden that he had been stopped for a seatbelt violation and that he was being taken to jail. The Defendant directed Ms. Harden to go to their residence and to remove a gun and a computer. Sgt Amburn stated that the Defendant was ultimately released on bond with regard to his state charges stemming from this incident.

Sgt Amburn stated that on November 10, 2010, the Defendant was arrested on a federal indictment when he appeared in state court. Sgt Amburn testified about a recording [Exh. 2] of a telephone call that the Defendant made to Stevi Harden, while he was detained following his arrest on the federal charge. In this call, the Defendant described the location of ammunition in their home and asked Ms. Harden to remove it. Sgt Amburn testified that a search warrant was executed at the Defendant and Ms. Harden's residence on November 12, 2010, and twelve rounds of ammunition were found in the location that the Defendant described in the prior telephone call. A laptop computer was also seized from the Defendant's residence at this time.

Sgt Amburn testified that on November 15, 2010, he and ATFE Agent Rebecca Bobich went to the Defendant's home to serve a subpoena on Ms. Harden. Ms. Harden agreed to talk with the agents and provided a second laptop computer to them. Ms. Harden also admitted that she had removed a firearm and ammunition from their home pursuant to the Defendant's phone call on February 18, 2010, and had given them to a friend. She stated that the defendant had an email account. Ms. Harden retrieved a .32 caliber gun and gave it to law enforcement that day. She turned over the ammunition on November 18, 2010.

Sgt Amburn stated that the Defendant had been convicted of aggravated sexual battery that occurred in 1987, when the then seventeen-year-old Defendant had sex with a five-year-old victim.[1]  As a result of this conviction, the Defendant was required to register as a sex offender in Tennessee.  As part of the registration requirements, the Defendant is required to register the identity of any email address that he establishes.  Sgt Amburn testified that the Defendant has not registered an email address to date.

Finally, Sgt Amburn testified regarding a November 23, 2010 letter [Exh. 7] sent from the Defendant to Ms. Harden while he was in custody.  Sgt Amburn stated that in the letter, the Defendant tells Ms. Harden not to testify with regard to his federal charge.

On cross-examination, Sgt Amburn stated that he had viewed the video and audio recording of the original traffic stop of the Defendant on February 18, 2010.  He agreed that the Defendant cooperated with the officers, told Ms. Harden that there was no use in lying at this point, and appeared to be honest.  The Defendant did not have a valid driver's license at the time of the traffic stop, but the Defendant explained to the officers that he was close to getting his license restored after paying $3,000.  Sgt Amburn agreed that the Defendant expressed concern about Ms. Harden and his daughter during the telephone conversation on February 18.

Sgt Amburn testified that the Defendant was released from custody from February 19 through November 10, 2010, and did not gain any additional charges.  Sgt Amburn could not agree that the Defendant had not violated the law during this time, noting that the Defendant possessed a computer and had other violations of the sex offender registration requirements. Sgt

---

[1]The Court notes that the Tennessee Sexual Offender/Violent Sexual Offender Registration/Verification/Tracking Form, that is a part of Exhibit 6, states that the victim was six years old.

Amburn stated that now that the Defendant is in federal custody, Ms. Harden and their daughter live alone in their trailer, which is in a rural area. He said that Ms. Harden told him that the .32 caliber gun that she produced was purchased for her, although she had never shot it and did not know how. She stated that the Defendant was suppose to teach her how to use it. On redirect examination, Sgt Amburn stated that the Defendant would have been a felon at the time that he purchased the firearm for Ms. Harden. The Government argued that the Defendant is both a flight risk and a danger to the community. AUSA Millican stated that the Defendant had a Glock .45 in his car when he was stopped on February 18, 2010. This firearm is the basis for the Indictment. The Government argued that in addition to the firearm in his vehicle, the Defendant maintained a second firearm in his home, which he directed his girlfriend to remove. The Defendant also directed his girlfriend to remove their computer. When the Defendant was arrested on the federal charge nearly nine months later, he again directed his girlfriend to remove ammunition from their home. The Government argued that this evidence reveals that the Defendant continued to maintain firearms and ammunition despite his prior felony conviction and his subsequent arrest on state charges.

The Government also pointed to the Defendant's violation of the sex offender registry requirements as further evidence of his dangerousness and failure to comply with the law. AUSA Millican argued that the Pretrial Services Report reveals that the Defendant has a ten-year-old daughter, whose existence he did not admit to the interviewing probation officer. The mother of this girl is the Defendant's wife's niece and was fifteen years old at the time that she bore this child. Finally, the Government argued that the Defendant is self-employed, which makes him a flight risk.

The Defendant argued that he had served his sentence for the 1987 conviction and that he presently had no formal charges for failure to comply with the sex offender registration

requirements. The Defendant was released on bond following his arrest for the underlying offense on February 18, and he has appeared in court four or five times in relation to his state charges, despite knowing that federal charges were imminent. Defense counsel noted that the Defendant was not arrested in the nine months following his release on bond, despite his alleged dangerousness. He argued that the .32 caliber gun that was in the Defendant and Ms. Harden's home was there for Ms. Harden's protection. He stated that the record is devoid of evidence that the Defendant had done anything with this gun, other than possess it. Accordingly, he contended that the Defendant is neither a danger nor a flight risk and could be released on conditions.

## ANALYSIS

Following a detention hearing, a defendant may be detained pending trial if no condition or combination of conditions exist that will reasonably assure (1) the defendant's appearance as required in court and (2) the safety of the community or any person in it. 18 U.S.C. § 3142(e). In the present case, the detention issue turns primarily upon whether any combination of conditions of release could reasonably assure the safety of the community. The Government must establish the lack of such conditions by clear and convincing evidence.

In light of the evidence presented at the hearing and in the Pretrial Services Report, the Court finds by clear and convincing evidence that no conditions of release exist that could reasonably assure the safety of the community. In making this determination, the Court has considered the factors enumerated in 18 U.S.C. § 3142(g). Factor one looks to the nature and circumstances of the offense charged, including whether it involves a firearm. See 18 U.S.C. § 3142(g)(1). Here, the Defendant is charged with being a felon in possession of a firearm. Thus,

5

factor (g)(1) applies and weighs in favor of detention.

Second, the Court finds that factor two, the weight of the evidence against the Defendant, also weighs in favor of detention. The Court has traditionally considered factor (g)(2) to relate to the weight of the evidence of the underlying offense. See 18 U.S.C. § 3142(g)(2). If the Court were to so consider it in this case, the Court would find that the Government presented no evidence of the underlying offense. Thus, the grand jury's probable cause finding would be balanced by the Defendant's presumption of innocence, and thus, this factor would weigh neither for nor against release.

The Sixth Circuit has recently concluded that factor (g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt[.]" United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010), cert.denied, 2010 WL 3455181 & 3697443 (U.S. Oct. 12 & 18, 2010). Viewing factor (g)(2) as relating to the weight of the evidence of the Defendant's dangerousness, the Court finds that this factor weighs in favor of detention. The Defendant has a prior felony conviction for aggravated sexual battery of a minor victim for which he served seven or more years. After his release from prison, the Defendant had sex with his minor niece and fathered a child. The Defendant attempted to hide this conduct by not telling the interviewing probation officer of this child's existence. In 2007, the Defendant entered a guilty plea to violating the sexual offender registry requirements. He received a suspended sentence of eleven months and twenty-nine days, which he served on probation. Despite this prior conviction, it appears that the Defendant continues to violate the sexual offender registration requirements by failing to register his email address or account or any other means of Internet communication, such as his cellular telephone with which he can access the Internet. Finally, the Defendant, a convicted felon, had a gun

in his car and a gun and ammunition in his residence. In light of these findings, the Court concludes that the weight of the evidence of the Defendant's dangerousness argues for detention.

The third factor for the Court to consider examines the history and characteristics of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court finds that some of these traits favor release, while others argue for detention. The Defendant's family ties, community ties, lack of history of drug or alcohol abuse, and record of court appearances all weigh in favor of release. The Court observes that these characteristics go toward whether the Defendant is a flight risk, and the Court finds that the Defendant does not present such a risk. On the other hand, the lack of evidence regarding the Defendant's employment or financial resources, as well as his past conduct and criminal history, which are discussed above, point to detention. Although factor (g)(3)(A) might appear to be equally balanced, the Court observes that the characteristics most relevant to the Defendant's dangerousness favor detention.

The Court must also consider whether, at the time of the Defendant's current offenses or his arrest therefor, the Defendant was on probation, parole, or pretrial release. See 18 U.S.C. § 3142(g)(3)(B). Although the Defendant was not on any type of release at the time of the offense, he was on bond for state charges at the time of his arrest on the instant federal charge. Given the disparity in result when considering this factor from the time of the offense versus the time of arrest, the Court finds that factor (g)(3)(B) argues neither for nor against release.

Finally, with respect to factor (g)(4), the Court finds the "nature and seriousness of

the danger to any person or the community that would be posed by the person's release" to be both great and grave with regard to this Defendant. See 18 U.S.C. § 3142(g)(4). The Defendant has a criminal history of aggravated sexual battery of a child and fathered a child with yet another minor following his release from prison. The Pretrial Services Report reveals that the Defendant has continued to date underage girls, who are regularly found at his business. Finally, the Defendant lives with a young child. Despite the Defendant's serving a prison term and a probationary term, the Defendant does not appear to feel constrained to follow the law. At the time of the current offense, he was driving without a driver's license or insurance and with a gun in the car. He also had a gun and ammunition at his house. After his arrest in February 2010, the Defendant continued to violate the sex offender registry requirements by having unregistered email accounts and other means of Internet communication. He also had ammunition in his house. Finally, the Defendant's telephone calls and letters to his girlfriend, directing her to dispose of evidence and attempting to influence her testimony, reveal both that the Defendant knew he was not suppose to have the firearm, computer, and ammunition and that he is willing to influence witnesses, tamper with evidence, and obstruct a criminal investigation. Moreover, this conduct occurred with the very person with whom the Defendant now proposes that he live. Although the Court is concerned by the fact that the Government did not indict or arrest this Defendant for some nine months following the February 18, 2010 traffic stop, the Court finds that the Defendant is a danger to the community by clear and convincing evidence. Thus, the Court finds that factor (g)(4) weighs decidedly in favor of detention.

Moreover, the Court has considered the Defendant's suggested conditions that he live with Ms. Harden and their young daughter and that he resume his self-employment as an auto mechanic, as well as other possible conditions, and finds that none exist that would reasonably assure

8

the safety of certain individuals or the community if the Defendant were released. Ms. Harden is the person whom the Defendant has engaged to dispose of evidence and whose testimony he has attempted to influence. Moreover, there is some evidence that the Defendant's place of employment is frequented by underage females. Accordingly, neither of these conditions alleviate the Court's concerns about the Defendant's dangerousness.

The Court finds the danger posed to the community from the Defendant's release to be great. Accordingly, the Court concludes that no condition or combination of conditions of release exist that could reasonably assure the safety of the community. Therefore, the Defendant is **ORDERED** to remain in detention until his trial. The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultations with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge